FILED
2014 Sep-29  AM 10:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| CHEREE M. DUDLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 2:12-cv-01762-MHH |
| | ) | |
| CITY OF BESSEMER, | ) | |
| ALABAMA | ) | |
| and KENNETH E. GULLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff CheRee Minor Dudley formerly was employed as the Chief Court Clerk for the City of Bessemer, Alabama Municipal Courts.  Ms. Dudley sued the City of Bessemer because she contends that the City terminated her based on her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.  She also alleges, under 42 U.S.C. § 1983, that the City and the Mayor of the City of Bessemer, Kenneth E. Gulley, violated her 14th Amendment right to equal protection.  Finally, Ms. Dudley asserts a state law assault claim against Mayor Gulley.  (Doc. 15).

The City and the Mayor have asked the Court to enter judgment in their favor on all of Ms. Dudley's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Citing Rule 56(c)(2), the Mayor and the City also ask the Court

to strike portions of the affidavits of Edward E. May, Lakisha Addie Minor, and Ms. Dudley.  Ms. Dudley filed those affidavits in opposition to the defendants' summary judgment motion.  As explained in greater detail below, the Court grants the defendants' motion for summary judgment with respect to Ms. Dudley's § 1983 and Title VII claims.  The Court declines to exercise supplemental jurisdiction over Ms. Dudley's state law assault claim and dismisses it without prejudice.  Given this disposition, the defendants' motion to strike is moot.

## I. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A). When considering a summary judgment motion, the Court must view the evidence in the record in the light most favorable to the non-moving party.  *Hill v. Wal-Mart Stores, Inc.*, 510 Fed. Appx. 810, 813 (11th Cir. 2013). "The court need consider only the cited materials, but it may consider other

materials in the record."  Fed. R. Civ. P. 56(c)(3).

## II. FACTUAL BACKGROUND

Ms. Dudley's claims against the City and Mayor Dudley relate to her termination in 2011, but this story begins with her selection as the Chief Court Clerk for the City of Bessemer.  The City hired Ms. Dudley on February 19, 2007.  Doc. 33-9 at 4.  The City posted the job opening, describing the position of Chief Court Clerk for the City of Bessemer Municipal Courts as follows:

> Work involves performing a wide variety of complex supervisory, administrative, and clerical tasks, either personally or through subordinate supervisors, in managing non-judicial functions of a large Municipal or Family Court system.

Doc. 35-13.   The "License/Certification Required" section of the position description lists "Ability to be certified as a Magistrate" as a licensure or certification requirement for the position.  *Id.*

Ms. Dudley submitted an application for the position to the Personnel Board of Jefferson County.  Doc. 35-16; Doc. 35-6 at 50.  The mayor of Bessemer at the time, Ed May, interviewed Ms. Dudley for the position and selected her on January 30, 2007.  Doc. 35-2.[1]  Ms. Dudley knew Mayor May before she began working for the City because she and Mayor May went to church together.  In fact, she

---

[1] The parties dispute whether Ms. Dudley's name appeared on the list of candidates for the position of Chief Court Clerk that the Personnel Board certified.  *Compare* Doc. 35-2 *with* Doc. 36 at 3.  This factual dispute is not material to the resolution of the defendants' summary judgment motion.

listed him as a reference on her employment application.  Doc. 35-6 at 48-49; Doc. 35-16.

When Mayor May interviewed Ms. Dudley and several other candidates for the position of Chief Court Clerk, Mayor May "was fully aware" that Ms. Dudley had a criminal history.  Doc. 35-1, p. 2.  The application for the position contains a section labeled "Criminal History."  In that section, the application asks:  "Have you ever been convicted of a state or federal felony criminal offense?"  Doc. 35-16, p. 4.  Ms. Dudley answered "yes." *Id.*

As it turns out, in March 2004, Ms. Dudley pled guilty to federal charges concerning a wire fraud scheme relating to real estate closings.  Ms. Dudley was the closing attorney for the real estate transactions.[2]  *See* Doc. 35-3, Ex. 3; Doc. 33-6; Doc. 35-6 at 22-24.  Pursuant to her plea agreement, Ms. Dudley served five months in a federal prison camp and five months of probation.  Doc. 35-6 at 37-38.

Mayor May attests that he "specifically discussed the issue of [Ms. Dudley's] prior conviction with the City attorney at the time," and he "received clearance from the City Attorney to hire her."  Doc. 35-1, pp. 2-3.  Mayor May added that Ms. Dudley's "prior criminal conviction did not adversely impact her ability to perform her job as Chief Court Clerk."  Doc. 35-1, p. 2.  In fact, during

---

[2] Ms. Dudley's law license was suspended for a period of three years as a result of her conviction and has not been restored because she worked at a law firm during the suspension without receiving written permission.  Doc. 33-18; Doc. 35-6 at 41-43.

her tenure with the City, Ms. Dudley received several merit pay increases, and she never was disciplined.  Doc. 35-8, p. 13.

When she began her job, both Mayor May and Travis Brooks, the acting city clerk and Principal Accountant for the City, supervised Ms. Dudley.  Doc. 35-5; Doc. 35-4 at 27, 30-33, 38.  Mayor May, Mr. Brooks, and Ms. Dudley all regarded Ms. Dudley as a "department head" during Mayor May's tenure.  Doc. 35-1; Doc. 35-5; Doc. 35-4 at 40.  Neither Mayor May nor his successor, Mayor Gulley, ever asked Ms. Dudley to become certified as a magistrate during her tenure with the City.  Doc. 35-5.

In the November 2010 mayoral election, Ed May lost to Kenneth Gulley. *See* Doc. 35-3 at 8, 21-23.  Shortly after his election, Mayor Gulley introduced the city department heads at a city council meeting, and he introduced Ms. Dudley as the department head of Municipal Court.  Doc. 35-4 at 54-55; Doc. 35-5.  After he held his first department head meeting, Mayor Dudley concluded that too many people attended the meeting.   Consequently, Mayor Gulley changed the department head structure so that only City employees who reported directly to the mayor would attend department head meetings.  Doc. 35-3 at 41, 52-54.  Mayor Gulley's definition of a department head excluded Ms. Dudley who Mayor Gulley believed was supervised by Mr. Brooks and other male employees.  *See* Doc. 35-3 at 52-54.

5

Initially, Mr. Brooks, who was the acting city clerk when Mayor Gulley took office, served as the department head for the Municipal Court and attended department head meetings with Mayor Gulley. *Id.* at 41, 47. Shortly after Mayor Gulley took office, Beverly Wheeler replaced Mr. Brooks. She became the acting city clerk and the department head. *See* Doc. 35-4 at 30, 52; Doc. 35-3 at 97. Despite their "acting city clerk" titles, both Mr. Brooks and Ms. Wheeler retained their accounting positions for purposes of Personnel Board classification. Doc. 35-3 at 42; Doc. 35-4 at 27, 30-33.

According to the defendants, in February or March 2011, shortly after Mayor Gulley took office, he received complaints from some of the Municipal Court employees both about Ms. Dudley and about working conditions at the court that were unrelated to Ms. Dudley's management, such as cramped working conditions. *See* Doc. 35-3 at 55-67.[3] Mayor Dudley, Ms. Wheeler, and City Attorney Shan Paden met with Ms. Dudley and several of the employees she supervised to discuss these issues. *Id.* Mayor Gulley testified that he did not conduct similar meetings in other city departments because he did not receive complaints from those employees. *Id.* No changes were made as a result of the complaints, and Mayor Gulley essentially told the complaining employees to

---

[3] Ms. Dudley offered evidence that contradicts the defendants' contention that City employees who worked with Ms. Dudley complained about her. Doc. 35-2. The defendants challenge the admissibility of this evidence. Doc. 37. Although the Court must view the evidence in the light most favorable to Ms. Dudley, the Court does not need to reach this evidence to resolve the defendants' summary judgment motion.

continue doing their jobs.  He told Ms. Dudley to make sure that she was in control of her department.  *Id.* at 64-67.  Ms. Dudley reports that during her meeting with Mayor Gulley, he screamed at her and told her she was not qualified to manage the office.  Doc. 35-6 at 169-72.  She testified that he looked like he was holding himself back from attacking her.  *Id.*

Coincidentally, in February or March 2011, Mayor Gulley learned of Ms. Dudley's criminal conviction and asked his legal team to investigate it.  Doc. 35-3 at 76-77.  On April 11, 2011, the City issued a Notice of Contemplated Disciplinary Action to Ms. Dudley for violation of the Personnel Board rules.  The notice cited a violation of Rule 12.2(o) based on Ms. Dudley's "inability to perform the essential functions of the job with or without reasonable accommodation," referring specifically to her "inability to be certified as a magistrate due to a prior felony conviction."  Doc. 35-3, Ex. 3.  The notice also cited a violation of Rule 12.2(p) "which provides that '[a]ny other legitimate and nondiscriminatory reason that constitutes good cause for disciplinary action, is reasonably specific, is consistent with the Act and these Rules, and is not motivated by any non-work-related preferences or animus for or against any person'" may be a basis for discipline.  Doc. 35-3, Ex. 3.  The notice stated that Ms. Dudley could not be certified as a magistrate because she could not meet the requirements established by the Alabama Code for public officers.  *See id.*

Alabama Code § 36-2-1 disqualifies any person who is convicted of a crime punishable by imprisonment in a federal penitentiary from holding public office.

The City held a disciplinary hearing on the matter on April 14, 2011, and the City terminated Ms. Dudley later that month. Doc. 33-9 at 3. Ms. Dudley contends that Maurice Mohammed, the next person hired at the Municipal Court, replaced her. *See* Doc. 35-3 at 40; Doc. 35-4 at 40-41. According to the City, it has eliminated the Chief Court Clerk position; however, Gwen Horn is now the Principal Court Clerk and has assumed most of Ms. Dudley's former responsibilities. Doc. 35-3 at 45-48.

Ms. Dudley appealed her termination to the Personnel Board and had a hearing before a hearing officer pursuant to the Personnel Board rules on August 2, 2011. Both Ms. Dudley and the City were represented by counsel who participated in a pre-hearing conference, presented witnesses at the hearing, and filed post-hearing briefs. Doc. 35-8, pp. 7-8. In a nine-page "Finding of Fact and Law and Recommended Decision," the hearing officer found that, "[t]he stated grounds for [Ms. Dudley's] termination were all related to her conviction. These grounds were valid and nondiscriminatory reasons for termination." Doc. 35-8, p. 10. The hearing officer noted that Ms. Dudley "argue[d] that her termination, by the suspicious nature of its timing, is purely political, and not based on issues of either law or merit." Doc. 35-8, p. 12. Ultimately, the hearing officer "concur[red] with

the Mayor that the substantial evidence supports the conclusion that **DUDLEY'S** status as a convicted felon constitutes a sufficient basis for her discipline 'for cause' pursuant to Rule 12.2(o) and/or Rule 12.2(p). The appropriate discipline herein is termination of employment." *Id.* (emphasis in Finding of Fact and Law and Recommended Decision).

The Personnel Board reviewed and affirmed the hearing officer's decision. Doc. 33-10; Doc. 35-8, p. 3. Ms. Dudley attempted to appeal the Personnel Board's decision to the Alabama Circuit Court, but the court deemed her appeal untimely. Doc. 33-11.

On May 10, 2011, Ms. Dudley filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Doc. 15-1. Ms. Dudley received a right to sue letter from the EEOC, which is dated February 3, 2012, and she filed her complaint in this case on time. *See* Doc. 15-2.

### III. ANALYSIS

#### A. § 1983 Issue Preclusion

The City and Mayor Gulley ask the Court to enter judgment for them on Ms. Dudley's § 1983 claim because, they argue, the Personnel Board's decision in favor of the City precludes Ms. Dudley's claim. State agency decisions that are not reviewed by a state court may preclude litigation over issues resolved in the administrative proceeding if the state agency decision meets the test articulated in

*University of Tennessee v. Elliott*, 478 U.S. 788 (1986).[4]  *See Gjellum v. City of Birmingham, Ala.*, 829 F.2d 1056, 1062 (11th Cir. 1987);[5] *Rigby v. Marshall*, 134 F. Supp. 2d 1259, 1262 (M.D. Ala. 2000).  In *Elliott*, the Supreme Court held that "when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts."  478 U.S. at 799 (quoting *Utah Construction & Mining Co., supra,* 384 U.S. 394, 422 (1966)).  Relying on *Elliott*, the City contends that the findings of the hearing officer preclude Ms. Dudley's § 1983 claims because Ms. Dudley "had an adequate opportunity to litigate the dispositive issues and facts regarding her claims in a trial-type hearing before the [Personnel Board]."  Doc. 33, p. 22.

---

[4] Because the Personnel Board's decision in this case was not reviewed by an Alabama state court on the merits, this Court will treat it as effectively being unreviewed.  *See* Doc. 33-11.  As discussed below, Plaintiff had a full and fair opportunity to litigate her case at the administrative level.  Contrary to her assertions, it is irrelevant for purposes of the § 1983 preclusion analysis whether and why her appeal of the Personnel Board's decision to the Alabama Circuit Court was not perfected.  Because her case was not reviewed by a state court on the merits, however, her Title VII claim is not precluded.  *See Bishop v. City of Birmingham Police Dep't*, 361 F.3d 607, 610 (11th Cir. 2004) ("[t]he clear teaching of *Elliott* is that in a Title VII action a prior state decision enjoys issue preclusive effect only if rendered or reviewed by a court.... In contrast, unreviewed administrative determinations lack preclusive effect in a subsequent Title VII action, regardless of any preclusive effect state law might accord to them.") (internal citation and quotations omitted).

[5] In *Gjellum*, the Eleventh Circuit made clear that *Elliott* pertains to issue preclusion, not claim preclusion.  829 F.2d at 1070.

Ms. Dudley argues, in reply, that *Elliott*'s principles concerning issue preclusion do not apply in this case for a number of reasons.  First, Ms. Dudley argues that the Personnel Board is not a "state agency" within the meaning of *Elliott* because it operates only within Jefferson County.  This Court disagrees with Ms. Dudley's analysis.  The Alabama Legislature created the Personnel Board, *see* Act No. 248, Ala. Acts 1945, and the Eleventh Circuit has treated similar administrative agencies that operate at the local level as state agencies for issue preclusion purposes.  *See Bishop v. City of Birmingham Police Dep't*, 361 F.3d 607, 610 (11th Cir. 2004) (referring to the Jefferson County Personnel Board as "an independent state agency" but holding that preclusion did not apply because claim at issue was brought under Title VII, not § 1983); *Travers v. Jones*, 323 F.3d 1294, 1296 (11th Cir. 2003) (applying *Elliott* preclusion to a merit system hearing decision made pursuant to the Code of DeKalb County, Georgia); *Crosby v. Mobile Cnty.*, 2005 WL 6133115, at *15 (S.D. Ala. Sept. 15, 2005), *as amended* (Oct. 13, 2005), *overruled on other grounds, Crosby v. Mobile Cnty. Pers. Bd.*, 2007 WL 245126 (11th Cir. Jan. 30, 2007) (noting that a decision of the Mobile County Personnel Board would have precluded a § 1983 claim filed by plaintiff); *cf. Ex parte Chambers*, 137 So. 3d 912, 915 n.3 (Ala. Civ. App. 2013) (Jefferson County Personnel Board "is not a state agency as to whose orders appellate review is governed by the [Alabama Administrative Procedure Act]").

The Court finds that the Personnel Board is a state administrative agency for purposes of issue preclusion under *Elliott*.  Consequently, the Personnel Board's findings regarding the issues before it are binding on this Court to the extent that those findings would have preclusive effect in Alabama state courts.[6]  In Alabama, state agency decisions have issue preclusive effect if:

> (1) there is identity of the parties or their privies; (2) there is identity of issues; (3) the parties had an adequate opportunity to litigate the issues in the administrative proceeding; (4) the issues to be estopped were actually litigated and determined in the administrative proceeding; and (5) the findings on the issues to be estopped were necessary to the administrative decision.

*Petty v. United Plating, Inc.*, 2012 WL 2047532, at *11 (N.D. Ala. May 31, 2012) (quoting *Ex Parte Shelby Medical Center, Inc.,* 564 So.2d 63, 68 (Ala.1990)); *see also Rigby*, 134 F. Supp. 2d at 1262.

Here, there is identity of the parties.  Ms. Dudley and a division of the City, its Municipal Court, were the official parties to the Personnel Board proceeding.  Because he is Mayor of Bessemer and the person who decided to terminate Ms. Dudley, Mayor Gulley has privity with the City for purposes of preclusion analysis.[7]

---

[6] It is undisputed that the hearing officer and the Personnel Board were acting in a judicial capacity and that the issues related to Ms. Dudley's termination were properly before them.

[7] *See Griswold v. Cnty. of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010) ("As a general rule, "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." [*Taylor v. Sturgell,* 553 U.S. 880, 128 S.Ct. 2161, 2171 (2008)] (quoting *Hansberry v. Lee,* 311 U.S. 32, 40, 61 S.Ct.

There also is identity of issues between the Personnel Board proceeding and Ms. Dudley's § 1983 claim in this litigation.  Both matters concern the reason for Ms. Dudley's termination.  The hearing officer was charged with determining whether Ms. Dudley was terminated for an "inability to perform the essential functions of the job with or without reasonable accommodation" and "[a]ny other legitimate and nondiscriminatory reason that constitutes good cause for disciplinary action, is reasonably specific, is consistent with the Act and these Rules, and is not motivated by any non-work-related preferences or animus for or against any person."  Doc. 33-9 at 3.  Similarly, in a § 1983 action, a court must evaluate whether a plaintiff was qualified for her job and whether her employer's proffered legitimate, nondiscriminatory reason for terminating her was a pretext for discrimination.  *See Marshall v. Mayor and Alderman of the City of Savannah, Ga.*, 366 Fed. Appx. 91, 97-98 (11th Cir. 2010); *Busby v. City of Orlando*, 931 F.2d 764, 777 (11th Cir. 1991).

---

115, 117, 85 L.Ed. 22 (1940)).  The rule against nonparty preclusion, however, is subject to six categories of exceptions.  *Id.* at 2172.  A court may apply nonparty preclusion if: (1) the nonparty agreed to be bound by the litigation of others; (2) a substantive legal relationship existed between the person to be bound and a party to the judgment; (3) the nonparty was adequately represented by someone who was a party to the suit; (4) the nonparty assumed control over the litigation in which the judgment was issued; (5) a party attempted to relitigate issues through a proxy; or (6) a statutory scheme foreclosed successive litigation by nonlitigants. *See id.* at 2172–73.");  *see also* Doc. 35-8, p. 12 (finding by hearing officer that he "concur[red] with the Mayor that the substantial evidence supports the conclusion that **DUDLEY'S** status as a convicted felon constitutes a sufficient basis for her discipline 'for cause' pursuant to Rule 12.2(o) and/or Rule 12.2(p).  The appropriate discipline herein is termination of employment.")

The parties had an adequate opportunity to litigate these issues during the Personnel Board proceeding. *See* Doc. 33-1 at 49-50. Both Ms. Dudley and the City had the chance to subpoena witnesses, present testimony, and offer other evidence in support their respective positions. *See* Doc. 33-1 at 50. Both parties were represented by counsel. Those attorneys participated in a pre-trial conference, examined witnesses during the hearing, and filed post-hearing briefs. *Id.* at 2-3; Doc. 35-8, pp. 7-8. At the conclusion of the hearing and briefing, the hearing officer issued a nine-page "Finding of Fact and Law and Recommended Decision," which the Personnel Board reviewed and adopted. Doc. 33-9; Doc. 33-10; Doc. 35-8, pp. 3-14. The issues that the Personnel Board's decision precludes from re-litigation in this action were necessary to the administrative decision. Indeed, determining whether the City terminated Ms. Dudley for a legitimate, non-discriminatory reason or for non-work-related preferences or animus for or against her was at the heart of the hearing officer's and Personnel Board's decisions.

In the administrative proceedings, the parties litigated, and the hearing officer and Personnel Board decided, the issues that have preclusive effect in this action. During those proceedings, Ms. Dudley did not present evidence that suggested that sex discrimination was the real reason for her termination. Instead, she argued before the hearing officer that she was fired for purely political reasons. Doc. 33-9, p. 8; Doc. 35-8, p. 12. Her failure to identify and prove facts

14

concerning alleged discrimination that were known to her at the time of the administrative proceeding does not allow her to evade issue preclusion in this action.  As Judge Thompson recognized in a similar situation involving a § 1983 claim, "[b]ecause these facts were known to [plaintiff] at the hearing, they could have, and should have, been raised."  *Rigby*, 134 F. Supp. 2d at 1264 (plaintiff's failure to mention during his unemployment compensation benefit appeal a campaign of harassment against him did not prevent the application of issue preclusion to the plaintiff's federal § 1983 claim such that plaintiff was estopped from presenting arguments or proof in the § 1983 action that he was terminated for a reason other than that found by the administrative referee).

Thus, the Personnel Board's decision would have preclusive effect in an Alabama state court, and it has the same effect here.  The administrative decision precludes Ms. Dudley from offering in support of her § 1983 claim arguments or proof that is inconsistent with the evidence and the arguments that she presented in the administrative proceedings.  The hearing officer and the Personnel Board found that the City's reasons for terminating her – namely her inability to hold public office or to be certified as a magistrate because of her criminal conviction – were "valid and nondiscriminatory reasons for termination."   Doc. 33-9 at 6. Consequently, as a matter of law, Ms. Dudley cannot demonstrate that she was fired because of discrimination, and she cannot prove that the City's proffered

reasons for her termination were mere pretext. *See Rawlinson v. Whitney Nat. Bank*, 416 F. Supp. 2d 1263, 1274 (M.D. Ala. 2005) ("to prevail under § 1983 where the plaintiff relies on circumstantial evidence, the plaintiff must show that the impermissible factor was 'the' motivating factor for the adverse-employment action"); *see also Ross v. Renaissance Montgomery Hotel & Spa at the Convention Ctr.*, 2:11-CV-301-MEF, 2012 WL 1032618, at *5-6 (M.D. Ala. Mar. 27, 2012) (due to collateral estoppel, court must accept that plaintiff was fired for misconduct and not because of his age).[8]

Therefore, the Court grants the defendants' motion for summary judgment on Ms. Dudley's § 1983 claims. *See Rigby*, 134 F. Supp. 2d at 1264.

### B. Title VII Claim Against the City

Because the doctrine of issue preclusion does not impact Ms. Dudley's Title VII discrimination claim against the City, the Court reaches the merits of that claim. *See Elliott*, 478 U.S. at 796. A plaintiff may establish a claim of discrimination "through direct evidence, circumstantial evidence, or through statistical proof." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir.

---

[8] In addition, because Ms. Dudley's termination was subject to meaningful administrative review by the Personnel Board, Mayor Gulley lacked the final policymaking authority required to subject the City to § 1983 liability. *See Scala v. City of Winter Park*, 116 F.3d 1396, 1399, 1401 (11th Cir. 1997) ("municipal liability [under § 1983] may be imposed for a single decision by municipal policymakers under appropriate circumstances;" however, "final policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review") (internal quotations and citations omitted).

2008).  Ms. Dudley has not offered direct evidence of discrimination, so the Court must analyze her discrimination claim under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).   To establish a prima facie case of sex discrimination, Ms. Dudley must show that (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the job; and (4) she was replaced by someone outside of her protected class, or similarly situated males were treated more favorably. *Maynard v. Bd. of Regents of Div. of Universities of Florida Dep't of Educ. ex rel. Univ. of S. Florida*, 342 F.3d 1281, 1289 (11th Cir. 2003).

It is undisputed that Ms. Dudley is a member of a protected class and that she suffered an adverse employment action when she was terminated.  Defendants contend, however, that Ms. Dudley was not objectively qualified for her job.  The Court agrees.[9]

It is undisputed that when Ms. Dudley applied to become the Chief Court Clerk for the City of Bessemer Municipal Courts, the job description listed "Ability to be certified as a Magistrate" as a licensure or certification requirement for the position.  Doc. 35-13.  Under Alabama law, a magistrate "must meet the

---

[9] The defendants also argue that Ms. Dudley was neither replaced by someone outside her protected class nor treated less favorably than similarly situated males.  The Court does not reach this argument.

general requirements established by law for public officers." Doc. 33-6 at 6, 8.

Alabama Code § 36-2-1 provides that "[t]hose who shall have been convicted of

treason, embezzlement of public funds, malfeasance in office, larceny, bribery or

any other crime punishable by imprisonment in the state or federal penitentiary"

are "ineligible to and disqualified from holding office under the authority of this

state." Ala. Code § 36-2-1 (1975). Therefore, as a matter of law, Ms. Dudley

could not be "certified as a Magistrate" because of her federal criminal

conviction.[10] Doc. 35-13. Consequently, she did not meet the objective magistrate

qualification for Chief Court Clerk.

The Court cannot infer that Ms. Dudley was qualified for her position even

though she held it for four years because she lacked an objective requirement for

the job. *See, e.g.*, *Anderson v. Embarq/Sprint*, 379 Fed. Appx. 924, 929 (11th Cir.

2010) (plaintiff could not establish he was qualified for his job where he could not

perform the physical requirements of it, such as frequently lifting up to 70 pounds);

*Samuels v. Univ. of S. Ala.*, 153 Fed. Appx. 612, 614 (11th Cir. 2005) (plaintiff did

not establish she was qualified for position of Ultrasonographer II despite already

holding the job where she lacked the requisite certification); *Santillana v. Florida

State Court Sys.*, 2011 WL 722765, at *16 (M.D. Fla. Feb. 23, 2011) *aff'd*, 450

---

[10] Although the parties dispute whether the Personnel Board placed Ms. Dudley's name on a list
of certified candidates eligible for the Chief Court Clerk position, there is no dispute that the
"ability to be certified as a Magistrate" was listed on the position description for which Ms.
Dudley applied.

Fed. Appx. 840 (11th Cir. 2012) (plaintiff failed to show she was qualified for position she held where she could not demonstrate that she met all the objective requirements in the job announcement); *Brady v. Santa Sweets, Inc.*, 2007 WL 1017670, at \*7 (M.D. Fla. Mar. 30, 2007) (plaintiff could not show he was qualified for job where defendant changed job requirements during plaintiff's tenure).[11]  Even if the Court were to consider it, Mayor May's affidavit does not help Ms. Dudley.  He stated that he "specifically discussed the issue of [Ms. Dudley's] prior conviction with the City attorney" before he hired Ms. Dudley, and he "received clearance from the City Attorney to hire her."  Doc. 35-1, pp. 2-3. That does not mean that Ms. Dudley met the licensure requirement, and Mayor May does not state that she did.

Because Ms. Dudley has not established that she met the objective criteria for Chief Court Clerk, the Court grants the City's motion for summary judgment

---

[11] Ms. Dudley cites a number of Eleventh Circuit opinions for the proposition that this Court should infer that she was qualified for her position.  Those opinions concern plaintiffs' qualifications based on *subjective* criteria, such as poor performance.  *See Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1495 n.2 (11th Cir. 1987); *Parris v. Keystone Foods, LLC*, 959 F. Supp. 2d 1291, 1305 (N.D. Ala. 2013).  Only one of the opinions that Ms. Dudley cites supports her argument that a plaintiff may be qualified even if she does not meet *objective* criteria.  *See Fejes v. Gilpin Ventures, Inc.*, 960 F. Supp. 1487, 1493 (D. Colo. 1997). *Fejes* was decided under the standard employed in the Tenth Circuit, which differs from the Eleventh Circuit's standard.  In addition, the plaintiff in *Fejes* presented evidence that the licensure requirement was not uniformly applied.  *Id.* at 1494.  Ms. Dudley presented no such evidence here.

on Ms. Dudley's Title VII claim.

### C. Assault Claim Against Mayor Gulley

Because the Court grants summary judgment on Ms. Dudley's federal claims, the Court declines to exercise supplemental jurisdiction over her state law assault claim against Mayor Gulley and will dismiss it without prejudice.  *See* 28 U.S.C. § 1367(c)(3) (court may decline to exercise such supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction); *Mergens v. Dreyfoos,* 166 F.3d 1114, 1119 (11th Cir. 1999) (dismissal of state law claims pursuant to § 1367(c) is encouraged if federal claims dismissed prior to trial). Accordingly, the Court finds that the state law claim remaining in this action is best resolved by an Alabama state court if Ms. Dudley chooses to re-file her assault claim in that forum.  *See* 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless [Alabama] law provides for a longer tolling period.").

### IV.  CONCLUSION

The Court **GRANTS** the defendants' motion for summary judgment with respect to Ms. Dudley's § 1983 and Title VII claims, and the Court **DISMISSES**

her state law assault claim without prejudice.  In light of this disposition, the Court deems the defendants' motion to strike **MOOT**.  The Court asks the Clerk to please **TERM** Docs. 33 and 37.  The Court will enter an order consistent with this memorandum opinion.

      **DONE** and **ORDERED** this September 29, 2014.

_____

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE